IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| JAMES DUNBAR and BETTY DUNBAR, | ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) ) NO. 3:07-0928 JUDGE HAYNES |
| SCHRADER-BRIDGEPORT INTERNATIONAL, INC. and JOHN DOE(S) 1-10, | ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM

Plaintiffs, James Dunbar and Betty Dunbar, Tennessee citizens, filed this action originally in the Circuit Court for Dickson County, Tennessee against Defendants:[1] Saltire Industrial, Inc., a Delaware corporation formerly known as Scovill, Inc.; Schrader-Bridgeport International, Inc., formerly known as Schrader Automotive, that operated a manufacturing plant in Dickson, Tennessee; Alper Holdings U.S.A., Inc., a Delaware corporation; Tomkins PLC that owns and operates Schrader-Bridgeport; the City of Dickson, Tennessee; Lewis Edward Kilmarx, a Tennessee citizen; William F. Andrews ("Andrews"), chairman, president, and chief executive officer of Schrader-Bridgeport. Plaintiffs assert Tennessee common law claims for trespass, permanent nuisance, negligence, and state statutory claims for ultra-hazardous activity, and negligence per se for violations of other statutes. Plaintiffs assert claims against the City of Dickson are under the Tennessee Government Tort Liability Act, Tenn. Code Ann. § 29-20-101

---

[1] Plaintiffs also named Schrader-Bridgeport and John Doe(s) 1-10 who were involved in the management of Defendant companies.

et seq. Plaintiffs' claims arise out of the contamination of a spring flowing through their property into which Defendants' were improperly disposed of hazardous wastes from the Dickson manufacturing plant. Id. In the state court, Plaintiffs dismissed their claims against Saltire, Tomkins, and the City of Dickson. (Notice of Removal, Docket Entry No. 1 at 2).

The Defendant Schrader-Bridgeport timely removed this action, citing 28 U.S.C. § 1334(b), the federal bankruptcy jurisdictional statute, and 28 U.S.C. § 1452, the bankruptcy removal statute. (Docket Entry No. 1). After removal, this action was transferred to this Court because of its similarity to other cases currently pending before the Court. (Docket Entry No. 23.) In prior proceedings in this Court, Plaintiffs' claims against Kilmarx were dismissed without prejudice upon stipulation of the parties (Docket Entry No. 26). Plaintiff voluntarily dismissed claims against Alper and Andrews (Docket Entry Nos. 28, 29).

Before the Court is Plaintiffs' motion to remand this action (Docket Entry No. 21), contending that this Court's jurisdiction was based solely on the Defendant Alper's bankruptcy proceeding. Id. at 1-2. Given that Alper is no longer a party, Plaintiffs argue that the Court lacks jurisdiction. (Docket Entry No. 21-1 at 3). Alternatively, Plaintiffs argue that if the Court has jurisdiction based upon Alper's bankruptcy, this Court must abstain from further proceeding under bankruptcy law, 28 U.S.C. § 1334(c)(2). Id.

In response, Schrader-Bridgeport asserts that although Alper has been dismissed as a party, Alper's bankruptcy remains related to this action and supports federal jurisdiction. (Docket Entry No. 24 at 1). Schrader-Bridgeport cites Alper's contractual duty to indemnify Schrader-Bridgeport for any damages awarded in this action and the amount of that indemnification impacts the size of Alper's bankruptcy estate. Id. at 6-7. Defendant also

2

contends that this action does not meet the requirements for mandatory abstention under 28 U.S.C. § 1334(c)(2). Id. at 8-10.

For the reasons set forth below, the Court concludes that Plaintiffs' motion to remand should be denied. Under Sixth Circuit law, this action is sufficiently related to Alper's bankruptcy proceeding to support jurisdiction under 28 U.S.C. § 1334(b). The Court also concludes that all of the requirements for mandatory abstention under 28 U.S.C. § 1334(c)(2) are not met here.

## A. Analysis of the Motion

According to the complaint, in 1998, Plaintiff Betty Dunbar purchased land in Dickson, Tennessee that had a natural spring, Bruce Spring, running through it, which Plaintiffs used for domestic purposes. (Docket Entry No. 1-1 at ¶¶ 14-15.) Plaintiffs later discovered that this spring had been contaminated by trichloroethylene ("TCE"), a solvent and degreaser used for cleaning machinery. Id. at ¶¶ 18, 28. Plaintiffs allege that Defendants improperly dumped TCE at the Dickson manufacturing plant and into Dickson County's public landfill. Id. ¶¶ 20-21.

Alper's indemnity obligations arose from sales and mergers of the manufacturing plant's owners. Scovill, Inc., constructed the plant in 1965 and operated the plant through its Schrader Automotive division until 1985. (Docket Entry No. 24 at 2-3). First City Industries, Inc. then purchased Scovill and sold off Schrader Automotive's assets that were transferred to Schrader Automotive, Inc. Id. at 3. Scovill (now owned by First City) then sold Schrader Automotive, Inc. to Arvin Industries, Inc. in 1986. Id. Under Schovill-Avrin the purchase agreement, the Dickson plant was not sold with Schrader Automotive, Inc. (Docket Entry No. 24-4 at 26, "Exclusion of Dickson Plant," Purchase Agreement § 2.20). Scovill/First City retained

3

ownership of the Dickson plant and agreed to indemnify Arvin and Schrader Automotive for any damages arising from pre-1986 events at the Dickson plant. The Purchase Agreement also includes the following indemnity:

> SECTION 4.2. Indemnity. (a) After the Closing Date, [Scovill] shall indemnify and hold harmless [Arvin], [Schrader Automotive], and [Schrader Automotive's subsidiaries], and their respective successors and assigns . . . , from, against, and in respect of any and all damages, deficiencies, costs, expenses or losses . . . resulting from . . . any lawsuit, action, administrative or arbitration or other proceeding or governmental investigation pending on the date hereof or arising out of events occurring on or prior to the Closing Date . . . .

(Docket Entry No. 24-4 at p. 29.)

First City conditionally guaranteed Scovill's indemnity obligations under the purchase agreement:

> Section 1. Guarantee. [First City Industries] hereby absolutely and unconditionally guarantees to [Arvin, Schrader Automotive, and Schrader Automotive's subsidiaries] the full and punctual payment and performance in accordance with their respective terms of all indemnification obligations of [Scovill] under or arising out of the Purchase Agreement . . . as and when due; provided, however, that such guarantee shall only be effective in the event that . . . any case or proceeding is commenced by or against [Scovill] under any bankruptcy . . . law . . . .

(Docket Entry No. 24-5 at pp. 2-3, Guarantee § 1).

Schrader Automotive is now Schrader-Bridgeport. (Docket Entry No. 24 at p. 2). Scovill is now Saltire Industrial and First City Industries is now Alper. Id. On or about August 27, 2004 Saltire filed a bankruptcy petition in the Southern District of New York (Docket Entry No. 24-6) giving rise to Alper's guarantee obligations as First City's successor. Alper then filed its bankruptcy petition in the Southern District of New York on or about July 13, 2007. (Docket Entry No. 24-11.)

After Plaintiffs filed this action, Schrader-Bridgeport issued a letter to Alper demanding

4

that Alper indemnify Schrader-Bridgeport for all costs and any eventual damages related to this case. (Docket Entry No. 24-8). Schrader-Bridgeport then filed this action against Alper in Delaware state court seeking to enforce Alper's obligations under the guarantee (Docket Entry No. 24-9).

## B. Conclusions of Law

Title 28 United States Code Section 1334(b) confers federal court jurisdiction on all causes of action related to bankruptcy proceedings:

> (b) Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

28 U.S.C. § 1334(b). In Celotex Corp. v. Edwards, 514 U.S. 300, 308 n.5 (1995), the Supreme Court held that actions "related to" bankruptcy actions include "suits between third parties which have an effect on the bankruptcy estate."

The Sixth Circuit earlier noted that "the extraordinarily broad wording" of the statute "leaves . . . no doubt that Congress intended to grant to the district courts broad jurisdiction in bankruptcy cases". In re Salem Mortgage Co., 783 F.2d 626, 634 (6th Cir. 1986). The Sixth Circuit later defined "related to" jurisdiction as whenever

> the outcome of the proceeding could conceivably have **any** effect on the estate being administered in bankruptcy. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate. A proceeding need not necessarily be against the debtor or against the debtor's property to satisfy the requirements for "related to" jurisdiction.

In re Dow Corning Corp., 86 F.3d 482, 489 (6th Cir. 1996) (quoting Pacor, Inc. v. Higgins, 743

5

F.2d 984, 994 (3d Cir. 1984) (emphasis added).

Dow Corning addressed whether a defendant's potential indemnification claims against a debtor qualified as arising under "related to" jurisdiction. 86 F.3d at 490-94. The Sixth Circuit stated that "[o]ur Circuit has held that Section 1334(b) 'does not require a finding of definite liability of [an] estate as a condition precedent to holding an action related to a bankruptcy proceeding.'" Id. (quoting In re Salem, 782 F.2d at 635). The Sixth Circuit then held that "the potential for [the debtor] being held liable to the nondebtors in claims for contribution and indemnification . . . suffices to establish a conceivable impact on the estate in bankruptcy." Id. at 494; see also Tenn. Consol. Ret. Sys. v. Citigroup, Inc., No. 3:03-0128, 2003 WL 22190841 at *2 (M.D. Tenn. May 9, 2003) ("[I]n this Circuit, contingent claims of contribution and indemnification are sufficient to invoke the 'related to' bankruptcy jurisdiction under 28 U.S.C. § 1334(b).") (citing In re Dow Corning).

Here, Schrader-Bridgeport seeks indemnification and enforcement of Alper's agreement. Alper is in bankruptcy. Any damages awarded in this action will impact the Alper's bankruptcy estate as well as the handling and administration of Alper's estate. Thus, the Court concludes that Schrader-Bridgeport indemnification claims bear a sufficient relationship to Alper's bankruptcy proceeding to vest this Court with jurisdiction under 28 U.S.C. § 1334(b). In re Dow Corning, 86 F.3d at 489.

As to Plaintiffs' mandatory abstention or argument, 28 U.S.C. § 1334(c)(2) provides:

> Upon timely motion of a party in a proceeding based upon a State law claim or a State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such a proceeding if an

action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2). Certain conditions must exist for mandatory abstention:

> Section 1334(c)(2) directs District Courts to decline jurisdiction over removed causes of action which, even if "related to" matters arising under Title 11 (and thus a fair subject for the assertion of original jurisdiction), satisfy the following elements: (1) timely motion raising abstention; (2) the action is based on state law; (3) the action was commenced and can be timely adjudicated in a state forum of appropriate jurisdiction; (4) the District Court would not have jurisdiction but for the "related" bankruptcy proceeding; and (5) the action is not a bankruptcy core proceeding and does not arise in a bankruptcy core proceeding. If the elements of mandatory abstention are satisfied, then the district court must remand.

RFF Family P'ship, LP v. Wasserman, No. 1:07 CV 1617, 2008 WL 648261 at *6 (N.D. Ohio Mar. 4, 2008) (citations and internal quotation marks omitted).

Here, Plaintiffs timely asserted abstention and their claims are based on state law in a state court action. This action is undisputedly not a core proceeding under federal bankruptcy law. Aside from Alper's bankruptcy proceeding, the pertinent jurisdictional statute is the diversity of the parties jurisdiction. 28 U.S.C. § 1332. At the time this action was filed Defendant Kilmarx, a Tennessee citizen was a defendant, but was dismissed after removal. (Docket Entry No. 26). Diversity is usually determined at the time of removal. Smith v. Sperling, 354 U.S. 91, 93 n.1 (1957). Yet, the dismissal of a dispensable non-diverse party can be appropriate to cure a jurisdictional default. See Newman Green, Inc. v. Alonzo Larrain, 490 U.S. 826, 837 (1989). Kilmarx appears to be a dispensable party and there is no showing of any harm by this Court's exercise of jurisdiction over the otherwise completely diverse parties. The Court therefore concludes that there is complete diversity between Schrader-Bridgeport and Plaintiffs who are Tennessee citizens, and the Court has jurisdiction under 28 U.S.C. § 1332, the

7

federal diversity statute.

Because the Court has jurisdiction under 28 U.S.C. § 1332, all of the conditions for mandatory abstention under 28 U.S.C. § 1334(b) are not met. Thus, renders unnecessary analysis of the Defendant's contentions that this action could not be timely adjudicated in state court.

For these reasons, Plaintiffs' motion to remand should be denied.

An appropriate Order is filed herewith.

**ENTERED** this the 19th day of August, 2008.

WILLIAM J. HAYNES, JR.
United States District Judge

8